## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAYUGA NATION )<br>256 Cayuga Street )<br>Union Springs, New York 13160, )<br>)<br>*Plaintiff,* )<br>)<br>v. )<br>)<br>THE UNITED STATES OF AMERICA, )<br>)<br>U.S. DEPARTMENT OF JUSTICE, )<br>U.S. Department of Justice )<br>950 Pennsylvania Avenue, NW )<br>Washington, DC 20530-0001 )<br>)<br>HONORABLE MERRICK GARLAND, )<br>in his official capacity as )<br>ATTORNEY GENERAL )<br>950 Pennsylvania Avenue, NW )<br>Washington, DC 20530-0001 )<br>)<br>HONORABLE TRINI ROSS, )<br>in her official capacity as )<br>UNITED STATES ATTORNEY FOR THE )<br>WESTERN DISTRICT OF NEW YORK )<br>138 Delaware Avenue )<br>Buffalo, NY 14202 )<br>)<br>*Defendants.* )<br>_____ ) | Civil Action No. _____<br><br>**COMPLAINT** |

## COMPLAINT

1.    The Cayuga Nation ("Nation"), a sovereign Indian nation recognized by the United States government, brings this action against the United States of America, the U.S. Department of Justice ("DOJ"), Attorney General Merrick Garland, and United States Attorney for the Western District of New York Trini Ross to redress DOJ's wrongful refusal to recognize, to meet with, and to aid and protect as statutorily required the sovereign government of the Cayuga Nation—as

1

chosen by the people of the Cayuga Nation and as formally recognized by the United States Department of the Interior ("Interior") and the Bureau of Indian Affairs ("BIA"), in formal decisions affirmed by the United States District Court for the District of Columbia.

## INTRODUCTION

2.     The federal government purports to honor and respect the rights of Native American peoples, who remain members of still-sovereign Indian nations, to self-determination and self-government.  The Congress has recognized "the obligation of the United States to respond to the strong expression of the Indian people for self-determination," 25 U.S.C. § 5302(a), and has declared "its commitment to the maintenance of the Federal Government's unique and continuing relationship with, and responsibility to, individual Indian tribes and to the Indian people as a whole through the establishment of a meaningful Indian self-determination policy," 25 U.S.C. § 5302(b).  President Biden has expressly "prioritized relationships with Tribal Nations that are built on respect for Tribal sovereignty and self-governance, honoring federal trust and treaty responsibilities, protecting Tribal homelands, and conducting regular, meaningful, and robust consultation."   The White House, Statements and Releases, FACT SHEET: *Biden-Harris Administration Announces New Actions to Support Indian Country and Native Communities Ahead of the Administration's Second Tribal Nations Summit* (Nov. 30, 2022), https://bit.ly/4765HD3.  The Supreme Court too has long recognized "the right of the Indians to govern themselves."  *Williams v. Lee*, 358 U.S. 217, 223 (1959).

3.     Thus, with regard to the rights of Indian self-determination and self-government, all Branches of the Government speak with one voice.  And Congress has ascribed to the Department of the Interior the responsibility for identifying the rightful government of an Indian nation, as determined by the Indian nation's own people and own laws.  *See*, *e.g.*, 28 U.S.C. § 1362

("The district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe or band *with a governing body duly recognized by the Secretary of the Interior*, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States." (emphasis added)).  Indeed, Congress has determined that "[t]he Commissioner of Indian Affairs shall, under the direction of the Secretary of the Interior, and agreeably to such regulations as the President may prescribe, *have the management of all Indian affairs and of all matters arising out of Indian relations*."  25 U.S.C. § 2 (emphasis added).

4.     From approximately 2005 through 2016, there were disputes to leadership within the Cayuga Nation—as is not uncommon in any body politic, and as occurred in the United States following the 2020 Presidential election.  The disputes to leadership within the Cayuga Nation led to property and business disputes, causing both the BIA and several courts to urge the Nation to resolve the dispute internally.  After almost a decade during which such disputes to leadership persisted, and several failed attempts at mediation, the Nation was at an impasse.  The Nation's federal support contracts were jeopardized.  Finally, with the assistance of the BIA's Office of Self Governance, the Nation took the leadership dispute directly to all enrolled Cayuga members.  Both factions of the leadership dispute actively participated in the internal governance process.  And through that process, more than 60 percent of all enrolled adult Cayuga members affirmed a Cayuga Nation Council, led by Clint Halftown as the Nation's Federal Representative, as the Nation's rightful government.

5.     In order to determine which faction of the leadership divide was entitled to receive federal grant money available for the Cayuga Nation, the BIA was required to evaluate the legitimacy of the internal Cayuga governance process, as a matter of controlling Cayuga Nation law.  To do so, the BIA sought and received extensive written briefing from both factions of the

leadership divide.  Ultimately, in a formal written decision, the BIA ruled it would recognize and respect the decision of the Cayuga people affirming the Halftown-led Cayuga Nation Council as the rightful government for the Nation.

6.      The opposition faction appealed the BIA's decision to higher officials within the Department of the Interior.  In a second formal written decision, the Assistant Secretary–Indian Affairs rendered a final decision for the Department of the Interior, affirming the decision of the BIA.

7.      The opposition faction challenged that decision in federal court, which affirmed Interior's decision.  *See Cayuga Nation v. Bernhardt*, 374 F. Supp. 3d 1 (D.D.C. 2019).  DOJ defended the Department of the Interior's decision, emphasizing the existence of "Federal courts' longstanding deference to the Department in matters concerning the proper representation of Indian tribal governments."  Mem. in Sup. of Defs.' Mot. for Sum. Judg. at 9, *Cayuga Nation v. Zinke*, Case No. 1:17-cv-01923-CKK, (D.D.C. July 10, 2018), ECF No. 51.  The opposition group did not appeal further.

8.      In a subsequent letter issued on November 14, 2019, then Assistant Secretary–Indian Affairs Tara Sweeney reaffirmed that the United States recognizes the Halftown Council "as the [Cayuga] Nation's governing body without qualification" and that the "Halftown Council is the Nation's government for all purposes."  Letter of Tara Sweeney, Assistant Secretary–Indian Affairs (Nov. 14, 2019) (attached as Exhibit A).

9.      The Department of the Interior is not alone within the Federal Government in formally recognizing the Halftown Council as the Cayuga Nation's governing body.  The White House invited Mr. Halftown to attend the recent 2022 White House Tribal Nations Summit as the representative of the Cayuga Nation.  President Biden, as well as numerous Cabinet officials

(including Attorney General Merrick Garland), participated in the Summit.  Mr. Halftown participated in the Summit as the representative of the Cayuga Nation and proclaimed in a statement that "[w]hile we are a sovereign and self-governing Nation, it was an honor to be invited to represent the Cayuga Nation and its interests before President Biden and the rest of the federal government last week" and that "[w]e appreciate the Biden Administration's support of Indian country."  *Cayuga Nation Leader Clint Halftown Invited to Represent Cayuga Nation at White House Tribal Nations Summit*, Cayuga Nation News (Dec. 8, 2022), https://cayuganation-nsn.gov/news/cayuga-nation-leader-clint-halftown-invited-to-represent-cayuga-nation-at-white-house-tribal-nations-summit.

10.    Despite these official determinations of the Cayuga people, the Department of the Interior, and the White House, DOJ has reserved for itself the right to decide otherwise concerning the status of the Nation's rightful government.  First, the FBI refused to allow the Cayuga Nation Police Department to access federal criminal databases as required by 28 U.S.C. § 534(d) and 34 U.S.C. § 41107(3), claiming that there remained a leadership dispute within the Cayuga Nation. The Cayuga Nation challenged that decision in federal court, and the court vacated the FBI's decision and remanded for further consideration.  *See Cayuga Nation v. United States*, 594 F. Supp. 3d 64 (D.D.C. 2022).  The FBI thereafter granted the Nation access to federal criminal databases.

11.    The Nation also sought to consult with the United States Attorney for the Western District of New York, the senior DOJ official with jurisdiction concerning a significant portion of the Cayuga Reservation in New York.  It is commonplace, critical for public safety, and required by both statute and DOJ's own Tribal Consultation Policy for United States Attorneys to coordinate closely with Indian nations in their District.  Such coordination is particularly important where, as here, there is overlapping federal, state, and tribal criminal jurisdiction on the Cayuga

5

Reservation.  The Department of the Interior expressly recognized, in response to an inquiry from the Chief of Police of Seneca Falls, New York, that the Cayuga Nation has "inherent sovereign authority to enforce its own laws inside the Cayuga Indian Nation Reservation boundaries through a law enforcement program."  Letter of Darryl LaCounte, Director, Bureau of Indian Affairs (June 17, 2019) (attached as Exhibit B).  Federal statutes require DOJ and the appropriate United States Attorney to coordinate, support, and aid Indian nations and their members in myriad ways.  Yet despite these obligations, the United States Attorney for the Western District of New York has refused, repeatedly, even to meet with the leadership and other tribal justice officials of the Cayuga Nation, on the purported ground that there remains a leadership dispute within the Cayuga Nation.

12.     Following these refusals by the United States Attorney, the Cayuga Nation formally requested, on September 18, 2023, to meet with senior DOJ officials to consult regarding DOJ's refusal to recognize and meet with the leadership of the Cayuga Nation.  The Nation sent a formal tribal consultation request to Attorney General Merrick Garland, Deputy Attorney General Lisa Monaco, and Associate Attorney General Vanita Gupta.  To date—almost two months later—DOJ has failed to respond or even acknowledge the Cayuga Nation's request.

13.     There can be no greater affront to tribal self-determination and self-government than for a Department of the Federal Government to refuse to recognize and meet with the leadership of an Indian nation chosen by its people, in a process recognized and respected by the Department of the Interior.  The refusal of DOJ to recognize and meet with leaders and tribal justice officials of the Cayuga Nation threatens public safety on the Cayuga Reservation in New York, which spans two counties.  It denies the Cayuga Nation and its members rights set forth in numerous federal statutes.  It violates federal statutory and common law principles protecting tribal

sovereignty, self-determination, and self-government.  And it violates principles of reasoned decisionmaking as required by the Administrative Procedure Act ("APA").

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 (because the Nation's claims arise under federal law), and 28 U.S.C. § 1362 (because this case is brought by an Indian nation and arises under federal law).  The United States has waived its sovereign immunity for claims for non-monetary relief brought under the APA and 5 U.S.C. § 706.  *See* 5 U.S.C. § 702.

15.     Venue is proper in this District both because several Defendants reside in the District, and because a substantial part of the events and omissions giving rise to the claim occurred in this District.  *See* 28 U.S.C. § 1391(b), (e).

## PARTIES

16.     The Cayuga Nation is a federally recognized sovereign Indian nation.  *See* Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs, 88 Fed. Reg. 2112, 2112 (Jan. 12, 2023).

17.     In the 1794 Treaty of Canandaigua, the United States recognized a federal reservation for the Nation comprising 64,015 acres—located within what today are Cayuga and Seneca Counties, New York—and pledged that the "reservation[ ] shall remain theirs, until they choose to sell the same to the people of the United States, who have the right to purchase."  Treaty of Canandaigua of 1794, art. II, 7 Stat. 44, 45.

18.     The Nation's Reservation has continuously existed for over 200 years, up through today.

19.     The Nation is governed by the Cayuga Nation Council.  The Nation's Federal Representative is Clint Halftown.

20.     The United States of America is a sovereign nation.

21.     The U.S. Department of Justice is part of the Executive Branch of the United States Government and is responsible for the enforcement of the law and administration of justice in the United States.

22.     Honorable Merrick Garland is the Attorney General of the United States and is sued in his official capacity.

23.     Honorable Trini Ross is the United States Attorney for the Western District of New York and is sued in her official capacity.

## FACTUAL ALLEGATIONS

24.     The governing body of the Cayuga Nation is the Cayuga Nation Council.  In 2005, the Council split over disputes concerning gaming and a potential settlement of the Nation's longstanding land claim against the State of New York.

25.     At the time, the Cayuga Nation Council consisted of six members.  Ultimately, three of those members aligned on one side of the split and three on the other.  The Federal Government attempted to mediate the dispute on several occasions, without success.

26.     In 2016, to address the decade-long impasse, Clint Halftown and other Council members proposed to take the leadership dispute directly to the Cayuga people.  The Halftown Council requested and received assistance from the BIA's Office of Self Governance.  The BIA ensured that the opposition group (which it came to refer to as the "Jacobs Council") was aware of the internal tribal governance process and had the opportunity to participate.  And the opposition group did participate—the Jacobs Council sent a letter to all adult Cayuga members, urging them to reject both the "Halftown Council" and a written statement of Cayuga Nation governance principles submitted by the Halftown Council.

27.     Ultimately, over 60 percent of all adult Cayuga members chose to recognize the Halftown Council as the Cayuga Nation's rightful government and to support the written statement of Cayuga Nation governance principles.  The BIA reviewed and verified the results.  The BIA invited both sides to submit written briefs addressing whether the governance process had been conducted in accordance with Cayuga law.  Both sides did so.  In a lengthy written decision, the BIA determined that the Cayuga people had validly resolved the leadership dispute in accordance with Cayuga law, and that the United States would recognize the Halftown Council as the authorized government of the Cayuga Nation.

28.     The Jacobs group appealed the BIA decision to the Interior Board of Indian Appeals and the Assistant Secretary–Indian Affairs took responsibility for the appeal.  Again, both sides submitted extensive written briefs in support of their respective positions.  In July 2017, the Assistant Secretary issued a lengthy, final decision for the Department of the Interior, affirming the BIA determination.

29.     The Jacobs group challenged Interior's decision in federal court, which affirmed in a published decision.  *See Cayuga Nation v. Bernhardt*, 374 F. Supp. 3d 1 (D.D.C. 2019).  DOJ defended the Department of the Interior's decision, emphasizing the existence of "Federal courts' longstanding deference to the Department in matters concerning the proper representation of Indian tribal governments."  Mem. in Sup. of Defs.' Mot. for Sum. Judg. at 9, *Cayuga Nation v. Zinke*, Case No. 1:17-cv-01923-CKK, (D.D.C. July 10, 2018), ECF No. 51.  The Jacobs group did not further appeal this decision.

30.     Later, then Assistant Secretary–Indian Affairs Tara Sweeney reaffirmed that the United States recognizes the Halftown Council "as the [Cayuga] Nation's governing body without

qualification" and that the "Halftown Council is the Nation's government for all purposes." Letter, Tara Sweeney, Assistant Secretary–Indian Affairs (Nov. 14, 2019) (attached as Exhibit A).

31.     Interior again confirmed in a March 2023 decision (which accepted certain Cayuga Nation lands into trust) that the Halftown Council is the Nation's government recognized by the United States.

32.     The Department of the Interior is not alone within the Federal Government in formally recognizing the Halftown Council as the Cayuga Nation's governing body. The White House invited Mr. Halftown to attend the recent 2022 White House Tribal Nations Summit as the representative of the Cayuga Nation. President Biden, as well as numerous Cabinet officials (including Attorney General Merrick Garland), participated in the Summit. Mr. Halftown participated in the Summit as the representative of the Cayuga Nation and proclaimed in a statement that "[w]hile we are a sovereign and self-governing Nation, it was an honor to be invited to represent the Cayuga Nation and its interests before President Biden and the rest of the federal government last week" and that "[w]e appreciate the Biden Administration's support of Indian country." *Cayuga Nation Leader Clint Halftown Invited to Represent Cayuga Nation at White House Tribal Nations Summit*, Cayuga Nation News (Dec. 8, 2022), https://cayuganation-nsn.gov/news/cayuga-nation-leader-clint-halftown-invited-to-represent-cayuga-nation-at-white-house-tribal-nations-summit.

33.     Despite the clear and consistent position of both the Department of the Interior and the White House, DOJ officials have asserted that the Cayuga leadership dispute has not been resolved, to this day. In doing so, these senior DOJ officials have never addressed the 2016 Cayuga governance process or explained why DOJ—contrary to the Department of the Interior, the White House, and a federal district court—has rejected that process and its results. Apparently, although

DOJ contends that *Federal courts* should defer to the Department of the Interior "concerning the proper representation of Indian tribal governments," *DOJ* does not need to abide by its own argument.  Mem. in Sup. of Defs.' Mot. for Sum. Judg. at 9, *Cayuga Nation v. Zinke*, Case No. 1:17-cv-01923-CKK (D.D.C. July 10, 2018), ECF No. 51.

34.    The issue arose for a time within the FBI, although the FBI later reversed course. Like many other Indian nations, the Cayuga Nation maintains a Tribal police force, which requested access to the FBI's Criminal Justice Information System ("CJIS") databases.  *See* 28 U.S.C. § 534(d).  The FBI initially denied the Nation's application on the ground that a leadership dispute still exists within the Nation.  Letter Decision of Trudy Lou Ford, FBI Criminal Justice Information Services Division (Feb. 4, 2021).  The Cayuga Nation challenged that decision in federal court, and the court vacated the FBI's decision and remanded for further consideration. *See Cayuga Nation v. United States*, 594 F. Supp. 3d 64 (D.D.C. 2022).  The FBI thereafter approved access to CJIS databases for the Nation.

35.    Unfortunately, the United States Attorney for the Western District of New York continues to maintain there is a leadership dispute within the Cayuga Nation, and therefore is refusing to meet with leadership and tribal justice officials of the Nation.

36.    It is typical for Indian nations to consult with the United States Attorney whose district encompasses the nation's lands.  There often are complex issues of federal, state, and tribal jurisdiction with regard to tribal lands, and it is important for there to be a means of dialogue between an Indian nation and local federal officials.  The complicated jurisdictional landscape is one of the reasons why American Indians generally, and Indigenous women and girls specifically, experience the highest rates of violent crime.  This is one of the reasons Attorney General Garland has teamed up with Secretary of the Interior Deb Haaland to address violence against Indigenous

women and girls and the phenomena of Missing and Murdered Indigenous Women.  *See*, *e.g.*, U.S. Dep't of the Interior, *Not Invisible Act Commission*, https://www.doi.gov/priorities/strengthening-indian-country/not-invisible-act-commission; Press Release, U.S. Dep't of Just., *Deputy Attorney General Lisa Monaco And Secretary Deb Haaland Meet With Not Invisible Act Commission* (Feb. 28, 2023), https://www.justice.gov/opa/pr/deputy-attorney-general-lisa-monaco-and-secretary-deb-haaland-meet-not-invisible-act.  The steadfast refusal of the United States Attorney for the Western District of New York to meet with Cayuga Nation leadership and tribal justice officials undermines the ability to address this and other public safety issues.

37.    The Cayuga Nation has a Reservation that is located in what today is Cayuga County, New York (which lies in the federal Northern District of New York) and Seneca County, New York (which lies in the federal Western District of New York).

38.    On November 9, 2021, shortly after Trini Ross was confirmed as United States Attorney for the Western District of New York, the Cayuga Nation congratulated her appointment and requested an opportunity for her to meet with Mr. Halftown, the Nation's Federal Representative.  Ms. Ross initially responded favorably, but then changed her position, stating that "it has come to my attention that there are two groups within the Cayuga Nation claiming to be the leaders of the Nation," and that "[a]s I work through this critical issue, I am unable to meet with either group . . . nor can I support either groups efforts."  Email Correspondence from T.Ross (Jan. 7, 2022) (attached as Exhibit C).

39.    Counsel for the Cayuga Nation immediately provided Ms. Ross the decision of the BIA, the final decision of the Department of the Interior, the decision of the United States District Court, and the letter from Assistant Secretary Sweeney described above.  Despite receiving these materials, Ms. Ross responded that "I cannot grant your request to meet at this time."  Email

Correspondence from T.Ross (Feb. 6, 2022) (attached as Exhibit D).  Ms. Ross did not provide any further explanation for her decision.

40.    On May 3, 2023, after the FBI had reversed its position as described above, the Deputy Superintendent of Police for the Cayuga Nation Police Department requested to meet with Samuel Palmiere, the Law Enforcement Coordinator in Ms. Ross's office.  *See* Email Correspondence from M.DuBois (May 3, 2023) (attached as Exhibit E).  The Law Enforcement Coordinator responded, however, that "[t]he guidance from my office is not to meet with you at this time" because "[o]ur meeting could be misconstrued that we are taking sides in the situation, we cannot meet with either side until there is clarification of leadership in the Cayuga's."  Email correspondence from S.Palmiere (June 2, 2023) (attached as Exhibit F).  Although the President of the United States, the Department of the Interior, and a United States District Judge have all recognized and respected the self-governance process of the Cayuga people, Ms. Ross apparently does not.

41.    On September 18, 2023, the Cayuga Nation formally requested to meet with the Department of Justice to consult regarding DOJ's refusal to recognize and meet with the leadership of the Cayuga Nation.  The Nation sent the request to Attorney General Merrick Garland, Deputy Attorney General Lisa Monaco, and Associate Attorney General Vanita Gupta.  *See* Cayuga Nation Request for Consultation (Sept. 18, 2023) (attached as Exhibit G (without attachments)).  To date—almost two months later—DOJ has failed to respond or even acknowledge the Cayuga Nation's request.

42.    As set forth below, DOJ has myriad statutory obligations requiring it to coordinate with, support, and aid Indian nations and their members.  Many of these obligations are delegated as a matter of federal law to the United States Attorney for the judicial district in which the Indian

nation is located.  Performance of these obligations requires DOJ and the relevant United States Attorney to coordinate and meet with the leadership of an Indian nation, including tribal justice officials designated by that leadership.

43.     As a matter of federal law, the leadership of an Indian nation is determined by the Indian nation itself and its people, and *not* by DOJ.  DOJ does not have the legal authority to refuse to meet with the leadership of an Indian nation, and the nation's designated tribal justice officials, because DOJ does not like that leadership or prefers other leadership.  Nor does DOJ have the legal authority to determine that there is a leadership dispute within an Indian nation when the citizens of that nation have determined their leaders in accordance with tribal law.  To the extent authority exists within the Federal Government to recognize the leadership of an Indian nation as determined under tribal law, Congress has conferred such authority on the Department of the Interior.

44.     Congress has required that "[t]he United States Attorney for each district that includes Indian country shall appoint not less than 1 assistant United States Attorney to serve as a tribal liaison for the district."  25 U.S.C. § 2810(a).  The statutory duties of a "tribal liaison" include the following:

> (1) Coordinating the prosecution of Federal crimes that occur in Indian country; (2) Developing multidisciplinary teams to combat child abuse and domestic and sexual violence offenses against Indians; (3) Consulting and coordinating with tribal justice officials and victims' advocates to address any backlog in the prosecution of major crimes in Indian country in the district; (4) Developing working relationships and maintaining communication with tribal leaders, tribal community and victims' advocates, and tribal justice officials to gather information from, and share appropriate information with, tribal justice officials; (5) Coordinating with tribal prosecutors in cases in which a tribal government has concurrent jurisdiction over an alleged crime, in advance of the expiration of any applicable statute of limitation; (6) Providing technical assistance and training regarding evidence gathering techniques and strategies to address victim and witness protection to tribal justice officials and other individuals and entities that are instrumental to responding to Indian country crimes; (7) Conducting training

> sessions and seminars to certify special law enforcement commissions to tribal justice officials and other individuals and entities responsible for responding to Indian country crimes; (8) Coordinating with the Office of Tribal Justice, as necessary; (9) Conducting such other activities to address and prevent violent crime in Indian country as the applicable United States Attorney determines to be appropriate.

25 U.S.C. § 2810(b).

45. Federal law further authorizes each United States Attorney serving a district that includes Indian country to appoint Special Assistant United States Attorneys to prosecute crimes in Indian country. *See* 25 U.S.C. § 2810(d). Congress has further declared: "It is the sense of Congress that, in appointing Special Assistant United States Attorneys under this subsection, a United States Attorney should consult with tribal justice officials of each Indian tribe that would be affected by the appointment." *Id.*, § 2810(d)(2).

46. These are only some of the duties imposed on United States Attorneys by the Tribal Law and Order Act of 2010, Pub. L. No. 111-211, tit. II, 124 Stat. 2261. *See Duties Imposed on United States Attorneys by Tribal Law and Order Act of 2010*, https://www.justice.gov/sites/ default/files/usao-az/legacy/2010/10/14/Tribal%20Law%20and%20Order%20Act%20of%20 2010%20Summary.pdf. DOJ summarized in a 2021 report to Congress that "the Department has worked to improve public safety for American Indians and Alaska Natives by consistently engaging with and working collaboratively with Tribal leaders." U.S. Dep't of Just., *Indian Country Investigations and Prosecutions*, at 3 (2021), https://www.justice.gov/d9/2023-08/2021_ -_indian_country_investigations_and_prosecutions_report.pdf. DOJ acknowledged that "every USAO [United States Attorney's Office] with Indian country in its district *is required to engage and consult annually, in coordination with its law enforcement partners, with the federally recognized Tribes in that district*." *Id.* at 18 (emphasis added). Indeed, "[w]ithin eight months of assuming office, every newly confirmed United States Attorney in these districts must conduct a

consultation with the Tribes in their district and develop or update the district's operational plan." *Id*.  It is precisely such consultation that United States Attorney Ross has expressly refused to conduct with the Cayuga Nation.  Yet DOJ has claimed to Congress:  "Tribal Liaisons typically have *relationships and frequent contact with Tribal governments, including government leaders*, law enforcement, courts, prosecutors, and social service agency staff."  *Id*. at 19 (emphasis added).

47.    Other federal statutes delineate responsibilities for DOJ to provide support for tribal nations and tribal justice systems, such as the Indian Tribal Justice Technical and Legal Assistance Act, 25 U.S.C. Chapter 38A.  Congress again expressly found and declared in that Act that "Indian tribes are sovereign entities and are responsible for exercising governmental authority over Indian lands," and that "enhancing tribal court systems and improving access to those systems serves the dual Federal goals of tribal political self-determination and economic self-sufficiency."  25 U.S.C. § 3651(2), (7).  These findings echo those in the Tribal Justice Support Act, wherein Congress declared that "the United States has a trust responsibility to each tribal government that includes the protection of the sovereignty of each tribal government," and that "Congress, through statutes, treaties, and the exercise of administrative authorities, has recognized the self-determination, self-reliance, and inherent sovereignty of Indian tribes."  25 U.S.C. § 3601(2), (3).

48.    These and other federal statutes impose obligations on DOJ generally, and on United States Attorneys specifically, to coordinate and meet with representatives of tribal nations and to support trial justice systems, including both tribal law enforcement programs and tribal courts.  Without any legitimate justification, and as a direct affront to well-established principles of tribal sovereignty, self-determination, and self-government, DOJ and United States Attorney Trini Ross have refused to fulfill those obligations to the Cayuga Nation, refusing even to meet with the tribal government leaders and with representatives of the Nation's law enforcement

program—even though the Nation's leaders were affirmed by the Cayuga people, through an open

and transparent tribal governance process that has been recognized and respected by the Bureau of

Indian Affairs, the Department of the Interior, and federal courts.

## CLAIMS FOR RELIEF

**Count One: Arbitrary, Capricious, and Unlawful Action in Violation of 25 U.S.C. § 2810 and Associated Provisions of the Tribal Law and Order Act of 2010, the Indian Tribal Justice Technical and Legal Assistance Act, and Other Federal Statutes, and in violation of the Administrative Procedure Act, 5 U.S.C. § 706(1)-(2)**

49.     Paragraphs 1 through 48 of this complaint are incorporated by reference as if fully

set forth herein.

50.     Under 25 U.S.C. § 2810, the United States Attorney for the Western District of

New York—which includes Indian country, including the federally-recognized Reservation of the

Cayuga Nation—must appoint a Tribal Liaison for the District.  *See* 25 U.S.C. § 2810(a).  The

Tribal Liaison is statutorily required to consult and coordinate with tribal justice officials,

including tribal justice officials of the Cayuga Nation; to develop a working relationship and to

maintain communication with tribal leaders, including tribal leaders of the Cayuga Nation; to

gather information from, and share appropriate information with, tribal justice officials, including

tribal justice officials of the Cayuga Nation; to coordinate with tribal prosecutors, including tribal

prosecutors of the Cayuga Nation; to provide technical assistance and training to tribal justice

officials, including tribal justice officials of the Cayuga Nation; and to conduct training sessions

and seminars to certify special law enforcement commissions to tribal justice officials, including

tribal justice officials of the Cayuga Nation.  *See id.*, § 2810(b).

51.     In implementing these statutory requirements of the Tribal Law and Order Act of

2010, the Indian Tribal Justice Technical and Legal Assistance Act, and related federal statutes,

DOJ has declared to Congress that "every USAO [United States Attorney's Office] with Indian

country"—which includes the United States Attorney's Office for the Western District of New York—"is required to engage and consult annually, in coordination with its law enforcement partners, with the federally recognized Tribes in that district"—which, in the case of the United States Attorney's Office for the Western District of New York, includes the Cayuga Nation. U.S. Dep't of Just., *Indian Country Investigations and Prosecutions*, at 18 (2021), https://www.justice. gov/d9/2023-08/2021_-_indian_country_investigations_and_prosecutions_report.pdf.     DOJ further declared that "[w]ithin eight months of assuming office, every newly confirmed United States Attorney in these districts must conduct a consultation with the Tribes in their district and develop or update the district's operational plan." *Id.*

52.     On November 9, 2021, shortly after Trini Ross was confirmed as the United States Attorney for the Western District of New York, the Cayuga Nation requested to meet with her. Contrary to her statutory obligations as set forth above, Ms. Ross refused to meet with leadership of the Cayuga Nation. *See* Email Correspondence from T.Ross (Jan. 7, 2022) (attached as Exhibit C).

53.     On May 3, 2023, representatives of the Cayuga Nation Law Enforcement Program requested to meet with Samuel Palmiere, the Law Enforcement Coordinator in the United States Attorney's Office for the Western District of New York. On instruction from Ms. Ross, Mr. Palmiere refused to meet with Cayuga Nation tribal justice officials. *See* Email correspondence from S.Palmiere (June 2, 2023) (attached as Exhibit F).

54.     In each case, Ms. Ross refused to meet with Cayuga Nation officials—either directly herself, or through her direction to the Law Enforcement Coordinator in her office—on the purported ground that there remains a leadership dispute within the Cayuga Nation and that it would be inappropriate for her or her office to appear to endorse one side of the dispute by agreeing

to meet with them.  Ms. Ross took this position despite the facts that (a) the leadership dispute was resolved by the Cayuga people in an open and transparent internal governance process, in which both factions of the leadership dispute participated, under applicable principles of Cayuga law; (b) the Cayuga Nation internal governance process was reviewed at length by both the BIA and the Assistant Secretary–Indian Affairs acting for the Department of the Interior, and both the BIA and Interior (which is statutorily responsible, under 25 U.S.C. § 2, for "management of all Indian affairs and of all matters arising out of Indian relations") made a determination to recognize and respect the resolution of the Cayuga leadership dispute by the Cayuga people through the internal governance process; and (c) the decision of Interior was challenged, but affirmed, by the United States District Court for the District of Columbia in a reported decision, *Cayuga Nation v. Bernhardt*, 374 F. Supp. 3d 1 (D.D.C. 2019).

55.    DOJ, acting through the United States Attorney for the Western District of New York, violated 25 U.S.C. § 2810 and associated provisions of the Tribal Law and Order Act of 2010 and the Indian Tribal Justice Technical and Legal Assistance Act and other federal statutes by refusing to meet with Cayuga Nation leaders and tribal justice officials.

56.    DOJ's refusals to meet with Cayuga Nation leaders and tribal justice officials were arbitrary and capricious in that the DOJ decision failed to "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'"  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).  DOJ "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs

counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.*

57.     In particular, and among other things, DOJ asserted that a leadership dispute existed within the Cayuga Nation, when it is for the Cayuga Nation itself—a sovereign and independent Indian nation—and not for DOJ to determine whether there is a leadership dispute within the Nation, and the Cayuga people themselves resolved in 2016 a leadership dispute that had existed before that time.

58.     DOJ's refusals to meet with Cayuga Nation leaders and tribal justice officials violated 25 U.S.C. § 2 and 28 U.S.C. § 1362 by failing to adhere to the determinations of the Department of the Interior that the leadership dispute within the Nation has been resolved; that the Halftown Council is "the Nation's government for all purposes"; and that the Cayuga Nation has criminal jurisdiction over Indian country.

59.     DOJ's refusals to meet with Cayuga Nation leaders and tribal justice officials were arbitrary and capricious in departing without explanation from determinations of the Department of the Interior, including that the Halftown Council is "the Nation's government for all purposes" and that the Cayuga Nation has criminal jurisdiction over Indian country, including on Reservation lands that are not held in trust for the Cayuga Nation.

60.     DOJ's refusals to meet with Cayuga Nation leaders and tribal justice officials are inconsistent with DOJ decisions involving other Indian tribes, with which DOJ has agreed to meet as required by federal law.  DOJ's unexplained departure from these other decisions renders DOJ's refusals to meet with Cayuga Nation leaders and tribal justice officials arbitrary and capricious and contrary to 25 U.S.C. § 5123(f)–(g), which forbids agencies from making decisions "with respect to a federally recognized Indian tribe that classifies, enhances, or diminishes the privileges

and immunities available to the Indian tribe relative to other federally recognized tribes by virtue of their status as Indian tribes."

61.     DOJ's refusals to meet with Cayuga Nation leaders and tribal justice officials are "final agency action" within the meaning of the Administrative Procedure Act, and the Nation has no other adequate remedy.  The Cayuga Nation formally requested an opportunity to consult with senior DOJ officials—specifically the Attorney General, the Deputy Attorney General, and the Associate Attorney General—regarding the refusals of the United States Attorney for the Western District of New York to meet with Cayuga Nation leaders and tribal justice officials, and regarding the assertions of Ms. Ross that there remains a leadership dispute within the Cayuga Nation, *see* Cayuga Nation Request for Consultation (Sept. 18, 2023) (attached as Exhibit G (without attachments)), but DOJ has failed to respond or even acknowledge the Cayuga Nation's formal request to consult with DOJ regarding these issues.

62.     DOJ's refusals to meet with Cayuga Nation leaders and tribal justice officials are arbitrary, capricious, an abuse of discretion, and contrary to law in violation of the APA.

63.     Accordingly, pursuant to 5 U.S.C. § 706(1) and (2), the Cayuga Nation is entitled to an order and judgment (a) declaring that DOJ is obligated to meet with Federal Representative Clint Halftown and other Cayuga Nation leaders and tribal justice officials chosen by the Cayuga people and recognized as the Nation's leaders by the Department of the Interior as required by 25 U.S.C. § 2810 and associated provisions of the Tribal Law and Order Act of 2010 and the Indian Tribal Justice Technical and Legal Assistance Act, and other provisions of federal law; (b) enjoining DOJ from declaring, maintaining or taking any Departmental action on the basis that there presently is a leadership dispute within the Cayuga Nation; and (c) providing such other relief as may be appropriate.

**Count Two: Arbitrary, Capricious, and Unlawful Action in Exercise of DOJ's Discretionary Authority to Consult With, Support, and Assist an Indian Nation, in Violation of the Administrative Procedure Act, 5 U.S.C. § 706(1)-(2)**

64.     Paragraphs 1 through 48 of this complaint are incorporated by reference as if fully set forth herein.

65.     Apart from its statutory obligations to consult with, support, and assist an Indian nation, DOJ routinely exercises discretionary authority to consult with, support, and assist Indian nations.   Such coordination and support is particularly important where, as here, there is overlapping criminal jurisdiction on an Indian nation's reservation.

66.     Even where the Government has discretion to act, the Government may not exercise that discretion on grounds that are arbitrary, capricious, discriminatory, or otherwise in violation of federal law.

67.     DOJ's refusals to meet with Cayuga Nation leaders and tribal justice officials, even if discretionary, are based upon reasons that are arbitrary, capricious, discriminatory, and otherwise in violation of federal law.   Congress expressly has determined that Indian nations remain sovereign and independent entities, with rights to self-determination and self-government. Among other provisions, Congress has recognized "the obligation of the United States to respond to the strong expression of the Indian people for self-determination," 25 U.S.C. § 5302(a), and has declared "its commitment to the maintenance of the Federal Government's unique and continuing relationship with, and responsibility to, individual Indian tribes and to the Indian people as a whole through the establishment of a meaningful Indian self-determination policy," 25 U.S.C. § 5302(b). Congress has found and declared that "Indian tribes are sovereign entities and are responsible for exercising governmental authority over Indian lands," and that "enhancing tribal court systems and improving access to those systems serves the dual Federal goals of tribal political self-

determination and economic self-sufficiency." 25 U.S.C. § 3651(2), (7). Similarly, Congress has found and declared that "the United States has a trust responsibility to each tribal government that includes the protection of the sovereignty of each tribal government," and that "Congress, through statutes, treaties, and the exercise of administrative authorities, has recognized the self-determination, self-reliance, and inherent sovereignty of Indian tribes." 25 U.S.C. § 3601(2), (3). The Biden Administration also has expressly "prioritized relationships with Tribal Nations that are built on respect for Tribal sovereignty and self-governance, honoring federal trust and treaty responsibilities, protecting Tribal homelands, and conducting regular, meaningful, and robust consultation." The White House, Statements and Releases, FACT SHEET: *Biden-Harris Administration Announces New Actions to Support Indian Country and Native Communities Ahead of the Administration's Second Tribal Nations Summit* (Nov. 30, 2022), https://bit.ly/4765HD3. In numerous decisions, the Supreme Court too has recognized "the right of the Indians to govern themselves." *Williams v. Lee*, 358 U.S. 217, 223 (1959). DOJ's refusal to meet with Cayuga Nation leaders and tribal justice officials on the ground that DOJ (expressly contrary to the Department of the Interior) maintains there is a leadership dispute within the Cayuga Nation violates these firmly established federal law principles and is a direct affront to the Cayuga Nation's rights of sovereignty, self-determination, and self-governance.

68.     Any exercise of discretion by DOJ in refusing to meet with Cayuga Nation leaders and tribal justice officials was arbitrary, capricious and unlawful in that the DOJ decision failed to "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *State Farm*, 463 U.S. at 43 (quoting *Burlington Truck Lines*, 371 U.S. at 168). DOJ "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered

an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.*  DOJ also based its decision on reasons that are discriminatory and contrary to federal law.

69.    Any exercise of discretion by DOJ in refusing to meet with Cayuga Nation leaders and tribal justice officials also violated 25 U.S.C. § 2 and 28 U.S.C. § 1362 by failing to adhere to the determinations of Interior that the leadership dispute within the Nation has been resolved; that the Halftown Council is "the Nation's government for all purposes"; and that the Cayuga Nation has criminal jurisdiction over Indian country.

70.    Any exercise of discretion by DOJ in refusing to meet with Cayuga Nation leaders and tribal justice officials was arbitrary and capricious in departing without explanation from determinations of Interior, including that the Halftown Council is "the Nation's government for all purposes" and that the Cayuga Nation has criminal jurisdiction over Indian country, including on Reservation lands that are not held in trust for the Cayuga Nation.

71.    Any exercise of discretion by DOJ in refusing to meet with Cayuga Nation leaders and tribal justice officials is inconsistent with DOJ decisions involving other Indian tribes, with which DOJ has agreed to meet as required by federal law.  DOJ's unexplained departure from these other decisions renders DOJ's refusals to meet with Cayuga Nation leaders and tribal justice officials arbitrary and capricious and contrary to 25 U.S.C. § 5123(f)–(g), which forbids agencies from making decisions "with respect to a federally recognized Indian tribe that classifies, enhances, or diminishes the privileges and immunities available to the Indian tribe relative to other federally recognized tribes by virtue of their status as Indian tribes."

72.    Any exercise of discretion by DOJ in refusing to meet with Cayuga Nation leaders and tribal justice officials is "final agency action" within the meaning of the Administrative

Procedure Act, and the Nation has no other adequate remedy.  The Cayuga Nation formally requested an opportunity to consult with senior DOJ officials—specifically, the Attorney General, the Deputy Attorney General, and the Associate Attorney General—regarding the refusals of the United States Attorney for the Western District of New York to meet with Cayuga Nation leaders and tribal justice officials, and regarding the assertions of Ms. Ross that there remains a leadership dispute within the Cayuga Nation, *see* Cayuga Nation Request for Consultation (Sept. 18, 2023) (attached as Exhibit G (without attachments)), but DOJ has failed to respond or even acknowledge the Cayuga Nation's formal request to consult with DOJ regarding these issues.

73.    Any exercise of discretion by DOJ in refusing to meet with Cayuga Nation leaders and tribal justice officials was arbitrary, capricious, an abuse of discretion, and contrary to law in violation of the APA.

74.    Accordingly, pursuant to 5 U.S.C. § 706(1) and (2), the Cayuga Nation is entitled to an order and judgment (a) declaring that DOJ is obligated to meet with Federal Representative Clint Halftown and other Cayuga Nation leaders and tribal justice officials chosen by the Cayuga people and recognized as the Nation's leaders by the Department of the Interior as required by 25 U.S.C. § 2810 and associated provisions of the Tribal Law and Order Act of 2010 and the Indian Tribal Justice Technical and Legal Assistance Act, and other provisions of federal law; (b) enjoining DOJ from declaring, maintaining or taking any Departmental action on the basis that there presently is a leadership dispute within the Cayuga Nation; and (c) providing such other relief as may be appropriate.

**Count Three: Violation of Trust Owed by Federal Government to the Cayuga Nation**

75.    Paragraphs 1 through 48 of this complaint are incorporated by reference as if fully set forth herein.

76.     The Supreme Court has recognized "the undisputed existence of a general trust relationship between the United States and the Indian people." *United States v. Mitchell*, 463 U.S. 206, 225 (1983).  Indeed, "[t]his principle has long dominated the Government's dealings with Indians." *Id*.

77.     The Supreme Court recently held that to maintain a claim based on an alleged breach of that trust, "the Tribe must establish, among other things, that the text of a treaty, statute, or regulation imposed certain duties on the United States." *Arizona v. Navajo Nation*, 599 U.S. 555, 563 (2023).  "The Federal Government owes judicially enforceable duties to a tribe only to the extent it expressly accepts those responsibilities.  Whether the Government has expressly accepted such obligations must train on specific rights-creating or duty-imposing language in a treaty, statute, or regulation." *Id*. at 564 (internal quotation marks omitted).

78.     As set forth above, Congress has enacted "specific rights-creating or duty-imposing language" in federal statutes, accepting a duty for DOJ to consult with and to provide benefits to Indian nations and tribal justice officials.  Congress has required that "[t]he United States Attorney for each district that includes Indian country shall appoint not less than 1 assistant United States Attorney to serve as a tribal liaison for the district."  25 U.S.C. § 2810(a).  The statutory duties of a "tribal liaison" include the following:

> (1) Coordinating the prosecution of Federal crimes that occur in Indian country; (2) Developing multidisciplinary teams to combat child abuse and domestic and sexual violence offenses against Indians; (3) Consulting and coordinating with tribal justice officials and victims' advocates to address any backlog in the prosecution of major crimes in Indian country in the district; (4) Developing working relationships and maintaining communication with tribal leaders, tribal community and victims' advocates, and tribal justice officials to gather information from, and share appropriate information with, tribal justice officials; (5) Coordinating with tribal prosecutors in cases in which a tribal government has concurrent jurisdiction over an alleged crime, in advance of the expiration of any applicable statute of limitation; (6) Providing technical assistance and training regarding evidence gathering techniques and strategies to address victim and

witness protection to tribal justice officials and other individuals and entities that are instrumental to responding to Indian country crimes; (7) Conducting training sessions and seminars to certify special law enforcement commissions to tribal justice officials and other individuals and entities responsible for responding to Indian country crimes; (8) Coordinating with the Office of Tribal Justice, as necessary; (9) Conducting such other activities to address and prevent violent crime in Indian country as the applicable United States Attorney determines to be appropriate.

25 U.S.C. § 2810(b).

79.     These are only some of the duties imposed on United States Attorneys by the Tribal Law and Order Act of 2010, Pub. L. No. 111-211, tit. II, 124 Stat. 2261. *See Duties Imposed on United States Attorneys by Tribal Law and Order Act of 2010*, https://www.justice.gov/sites/default/files/usao-az/legacy/2010/10/14/Tribal%20Law%20and%20Order%20Act%20of%20 2010%20Summary.pdf.  DOJ summarized in a 2021 report to Congress that "the Department has worked to improve public safety for American Indians and Alaska Natives by consistently engaging with and working collaboratively with Tribal leaders."  U.S. Dep't of Just., *Indian Country Investigations and Prosecutions*, at 3 (2021), https://www.justice.gov/d9/2023-08/2021_-_indian_country_investigations_and_prosecutions_report.pdf.  DOJ acknowledged that "every USAO [United States Attorney's Office] with Indian country in its district *is required to engage and consult annually, in coordination with its law enforcement partners, with the federally recognized Tribes in that district*."  *Id.* at 18 (emphasis added).  Indeed, "[w]ithin eight months of assuming office, every newly confirmed United States Attorney in these districts must conduct a consultation with the Tribes in their district and develop or update the district's operational plan."  *Id.*

80.     DOJ has failed to perform these statutory and regulatory duties with regard to the Cayuga Nation, in violation of the trust obligation of the Federal Government to the Nation.  Accordingly, the Cayuga Nation is entitled to an order and judgment (a) declaring that DOJ is

obligated to meet with Federal Representative Clint Halftown and other Cayuga Nation leaders and tribal justice officials chosen by the Cayuga people and recognized as the Nation's leaders by the Department of the Interior as required by 25 U.S.C. § 2810 and associated provisions of the Tribal Law and Order Act of 2010 and the Indian Tribal Justice Technical and Legal Assistance Act, and other provisions of federal law; (b) enjoining DOJ from declaring, maintaining or taking any Departmental action on the basis that there presently is a leadership dispute within the Cayuga Nation; and (c) providing such other relief as may be appropriate.

## PRAYER FOR RELIEF

**WHEREFORE,** the Cayuga Nation prays that the Court:

81.     Enter an order declaring that DOJ is obligated to meet with Federal Representative Clint Halftown and other Cayuga Nation leaders and tribal justice officials chosen by the Cayuga people and recognized as the Nation's leaders by the Department of the Interior, as required by 25 U.S.C. § 2810 and associated provisions of the Tribal Law and Order Act of 2010 and the Indian Tribal Justice Technical and Legal Assistance Act, and other provisions of federal law;

82.     Enter an injunction prohibiting DOJ from declaring, maintaining or taking any Departmental action on the basis that there presently is a leadership dispute within the Cayuga Nation;

83.     Award the Nation reasonable costs and attorneys' fees; and

84.     Award such other relief, legal or equitable, as this Court may deem just and proper.

Dated:  November 13, 2023

Respectfully submitted,

/s/ David W. DeBruin
David W. DeBruin (D.C. Bar No. 337626)
JENNER & BLOCK LLP
1099 New York Avenue, N.W.
Washington, D.C. 20001
Tel:  (202) 639-6000
Fax:  (202) 639-6066
ddebruin@jenner.com