# EXHIBIT A



## United States Department of the Interior

OFFICE OF THE SECRETARY
Washington, DC 20240

NOV 1 4 2019

Mr. David DeBruin
Counsel, Cayuga Nation of New York
Jenner & Block
1099 New York Avenue, NW, Suite 900
Washington, D.C. 20001

Dear Mr. DeBruin:

Thank you for your letter dated November 4, 2019, requesting that I clarify a decision of the Acting Assistant Secretary – Indian Affairs (AS-IA) Michael S. Black, dated July 13, 2017, in the matter of *The Cayuga Nation by its Council of Chiefs and Clan Mothers v. Eastern Regional Director, Bureau of Indian Affairs* (Black Decision).

The Black Decision affirmed the decision of the Bureau of Indian Affairs (BIA) Eastern Regional Director, Bruce Maytubby, (Maytubby Decision), dated December 15, 2016, in which the BIA recognized a leadership group led by Mr. Clint Halftown (Halftown Council) as the governing body of the Cayuga Nation of New York (Nation).[1] The Maytubby Decision determined that a 2016 "statement of support" process, through which the citizens of the Nation acknowledged the Halftown Council to be the Nation's government for all purposes, complied with Nation law and was binding on the Department of the Interior (Department).

I understand from your letter that various parties have argued that in the Maytubby and Black Decisions, the Department did not recognize the Halftown Council for any purpose other than entering into contracts under the Indian Self-Determination and Education Assistance Act (ISDEAA). These parties have concluded that while the Halftown Council may act on behalf of the Nation for ISDEAA purposes, any other governmental action taken by the Halftown Council is inherently *ultra vires* and beyond the scope of Departmental recognition.

I respond to reaffirm that the Maytubby Decision, as upheld by the Black Decision, recognized the Nation's acknowledgment of the Halftown Council as the Nation's governing body without qualification. At no point since the issuance of the Black Decision has the Department considered the Halftown Council's governmental authority to be limited in any way. The Halftown Council is the Nation's government for all purposes.

To whatever extent there may be questions as to the scope of either the Maytubby or Black Decisions, I explain below how nothing in either Decision has changed the status quo from a

---

[1] Letter from Bruce W. Maytubby Sr., Dir. Bureau of Indian Affairs E. Region, to Mr. Clint Halftown and Mr. William Jacobs (Dec. 15, 2016) [hereinafter "Maytubby Decision"].

Federal perspective. Nothing in this explanation changes the Department's recognition of the Halftown Council since the Black Decision. Rather, as both Maytubby and Black noted, I reiterate that the statement of support campaign carried out during the summer of 2016 was a valid resolution of an intratribal dispute by a tribal mechanism.[2] The Department continues to recognize and follow that non-qualified acknowledgment of the Halftown Council as the Nation's governing body.

## A. BIA Recognizes the Leadership of Clint Halftown on a Limited Basis in 2015.

The Nation was embroiled in an internal leadership dispute for many years. In 2015, two of the various leadership factions submitted proposed modifications to existing Nation ISDEAA contracts.[3] Then-Acting BIA Eastern Regional Director Tammie Poitra concluded that, in light of the dispute, the BIA would continue to work with Mr. Halftown in his capacity as the representative of the Nation's last undisputed tribal government.

Importantly, Ms. Poitra explicitly stated that the BIA Eastern Region was *not* recognizing Mr. Halftown for any purpose whatsoever other than ISDEAA contracting.[4] Rather, she wrote that the "scope of the powers of the Federal representative is a question of Nation law not properly resolved by the Region," and that instead, Mr. Halftown would only "be the Nation's representative for purposes of administering ongoing [ISDEAA] contracts."[5] Nevertheless, Ms. Poitra encouraged the Nation to resolve its internal dispute, noting:

> The Nation has not used elections to select leaders, relying instead upon customary processes based on a longstanding oral tradition and a commitment to government by consensus. At an appropriate time, if it appears that tribal fora for dispute resolution are exhausted, the BIA could, based on the record before it, make a decision on the merits of Nation Law. This is not that appropriate time, and the Region hopes that the Nation will resolve this dispute itself before that time comes.[6]

## B. BIA Recognizes the Halftown Council in 2016.

The Poitra Decision kept the status quo for purposes of the BIA's interaction with the Nation in the final year of the existing ISDEAA contracts. When those contracts expired in 2016, two groups submitted new ISDEAA proposals: a group led by Mr. Halftown (Halftown Faction) and a group led by Mr. William Jacobs (Jacobs Faction). The Halftown Faction sought to establish its status as the Nation's government, and thus its eligibility to submit an ISDEAA contract proposal, by conducting a "statement of support" process. The Halftown Faction sent all voting age tribal members two survey questions, one asking whether they supported the Halftown Faction as the Nation's government, the other asking whether they agreed that a particular process for identifying the tribal government was consistent with Cayuga law. Citizens could indicate their agreement by

---

[2] Maytubby Decision at 2. All documents cited in this Letter are part of the administrative record before the United States District Court for the District of Columbia in *Cayuga Nation v. Zinke*, 374 F. Supp. 3d 1 (D.D.C. 2019).

[3] Letter from Tammie Poitra, Acting Dir., Bureau of Indian Affairs E. Region, to Daniel J. French *et al.* at 2 (Feb. 10, 2015) [hereinafter "Poitra Decision"].

[4] *Id.* at 2 n.1.

[5] *Id.*

[6] *Id.* at 7.

returning the surveys, or indicate non-agreement by not returning the surveys. Sixty percent of the citizens returned surveys indicating support for each of the proposals.[7]

The specific language of the statement of support is relevant in the current context. By signing and returning the statement of support, a Nation citizen indicated his or her agreement with the following statements:

> The Cayuga Nation Council is the governing body of the Cayuga Nation of New York. . . . I recognize only the following individual Representatives from the Heron, Turtle, Bear, and Wolf Clans as serving on the Cayuga Nation Council:
>
> > Clint Halftown, Heron Clan Representative and Federal Representative
> > Tim Twoguns, Turtle Clan Representative and Alternate Federal Representative
> > Gary Wheeler, Turtle Clan Representative
> > Donald Jimerson, Bear Clan Representative
> > Michael Barringer, Wolf Clan Representative[8]

Regional Director Maytubby invited opening and response legal briefs from the opposing factions on various questions, including the validity of the statement of support process under traditional Cayuga law and the BIA's authority to adjudicate a tribal leadership dispute. The Regional Director concluded that while the statement of support process was flawed as executed, those flaws were not sufficient to compel rejection of the outcome. The Regional Director explained that "[w]here a question is put to the entire tribal membership for resolution by plebiscite, Federal rejection of the outcome would be an impermissible intrusion into a tribe's exercise of sovereignty."[9]

The Regional Director repeatedly emphasized that unlike the Poitra Decision, he was *not* merely recognizing the Halftown Council for the purposes of signing Federal contracts. First, the Regional Director noted that the ISDEAA defines a "tribal organization" eligible to participate in contracting as "*the recognized governing body* of any Indian tribe; any legally established organization of Indians which is controlled, sanctioned, or chartered by such governing body . . ."[10] 25 U.S.C. § 5304(1). The Regional Director concluded that his task was to determine whether either of the factions had submitted an ISDEAA proposal from "the recognized governing body" as so defined.[11] Second, the Regional Director issued his decision less than two years after the Poitra Decision, which explicitly limited the recognition of Mr. Halftown to Federal contracting. The Regional Director was aware as to how to structure a decision that was so limited, but instead emphasized that the lack of progress on an internal resolution to the dispute after the Poitra Decision now required a final adjudication of the Nation's leadership.[12] Third, the Regional Director listed several reasons why he had "the duty, and therefore the authority, to decide which, if either, of the 638 proposals was submitted by a valid governing body,"[13] including non-ISDEAA contracting

---

[7] Black Decision at 3-8.

[8] Letter from Halftown Council, Cayuga Nation, to Cayuga Citizens (July 6, 2016), attachment 2, "Statement of Support for the Cayuga Nation's Leaders."

[9] Maytubby Decision at 7-8.

[10] *Id.* at 2 (citing 25 U.S.C. § 5304(1) (emphasis added)).

[11] *Id.* at 2-3.

[12] *Id.* at 3.

[13] *Id.* at 4.

matters such as eligibility for other Federal programs, the status of a tribal liquor control ordinance, the Nation's ability to take land into trust, a resolution to separate Federal court litigation concerning the leadership dispute, providing clarification to other Federal agencies, and maintaining public safety.[14]  The Regional Director ultimately concluded that he was "recognize[ing] the Halftown Council as the governing body of the Cayuga Nation"[15] and in no way suggested that that determination was limited to ISDEAA contracting or for any other narrow purpose.

### C. AS-IA Affirms the Maytubby Decision in 2017.

The Jacobs Faction appealed the Maytubby Decision.[16]  After similarly considering opening and reply briefs from both Factions and the Regional Director (as represented by the Solicitor's Knoxville Field Office), the AS-IA "affirm[ed] the Regional Director's Decision to recognize the Halftown Council as the legitimate Cayuga Nation government and to reject Appellants' 638 proposal as unauthorized."[17]  The AS-IA further concurred with the Regional Director's determination that the Department had a duty to respect the results of the statement of support campaign as an expression of tribal will.[18]

In fully affirming the Maytubby Decision, which manifestly recognized the Halftown Council as the Nation's government for all purposes, the Black Decision by definition so recognized the Halftown Council as well.[19]  The United States District Court of the District of Columbia affirmed the Black Decision,[20] and the Jacobs Faction did not appeal.

### D. Conclusion.

The Department has always operated pursuant to Regional Director Maytubby's conclusion that the statement of support process represented the Nation's recognition of the Halftown Council for all purposes.  The Halftown Council remains the tribal leadership as a matter of Federal law.

Sincerely,

Tara Sweeney
Assistant Secretary – Indian Affairs

---

[14] *Id.* at 3-4.
[15] *Id.* at 14.
[16] The Jacobs Faction originally appealed to the IBIA, but the AS-IA assumed jurisdiction over the appeal.
[17] Black Decision at 2.
[18] *Id.* at 14.
[19] *See, e.g., id.* at 12 (it was justified for the Regional Director to determine "which group properly represents the Nation").
[20] *Cayuga Nation v. Zinke*, 374 F. Supp. 3d 1 (D.D.C. 2019).